1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELLYCIA PRICE,<br><br>     Plaintiff<br><br>v.<br><br>WASHINGTON STATE, WASHINGTON<br><br>STATE DEPARTMENT OF COMMERCE;<br><br>Theresa Burkheimer, and LAUREN WATTS<br><br>     Defendants | CAUSE NO.<br><br>COMPLAINT AND<br><br>JURY DEMAND |

COMES NOW the Plaintiff, Ellycia Price, by and through her attorney of record, Richard Wooster of the law firm of Kram & Wooster, P.S., for cause of action against the Defendants complain and allege as follows:

## I. JURISDICTION AND VENUE.

1.1   Plaintiff is a resident of Pierce County.

1.2   Defendant State of Washington is State Government, and the Department of
       Commerce (DOC) is a state agency of that government.   Many of the actions
       complained of herein occurred in, or were ratified, in Thurston County Washington.

COMPLAINT - Page 1

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1.3 Defendant Lauren Watts ("Watts") was employed by DOC as Deputy HR Director and took or directed adverse employment actions against Price under color of law.

1.4 Theresa Burkheimer was at all time relevant, the DOC Chief Human Resources Officer and took or directed adverse employment actions against Price under color of law.

1.5 Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331 (federal question); 28 U.S.C. §1343 (Civil Rights); and 28 U.S.C. §1367 (Supplemental Jurisdiction).

## II.    FACTUAL BACKGROUND.

2.1    Plaintiff ELLYCIA PRICE ("Price") was hired by the DOC as a Human Resource Consultant 4 (lead recruiter) in September 2023. Price is Black/African American ("Black").

2.2    Price reported directly to Workforce Planning and Data Managing Director Lindsey Henderson ("Henderson"). Henderson and Deputy HR Director Lauren Watts ("Watts") were peers, both reporting to Chief Human Resources Officer Theresa Burkheimer ("Burkheimer"). Price was the only African American/Black female employee in her immediate unit and in the relevant HR reporting chain.

2.3    Beginning in November 2023 Plaintiff made repeated reports regarding Watts' conduct, including concerns about hostility, disparate treatment, improper corrections, and interference with Price's duties.

2.4    Price continued making protected complaints regarding Watts to Henderson throughout late 2023, early 2024, and into 2025. These reports included concerns regarding discrimination, retaliation, document manipulation, improper use of HRMS, and violations of merit-based hiring laws.

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2.5     Price informed management that Commerce's hiring environment reflected impermissible cronyism and lacked the merit-based standards required of state service, raising matters of public concern. She also reported ethics concerns regarding HR leadership's handling of executive recruitments.

2.6     This conduct occurred after Price was placed under the supervision of a new supervisor, Lauren Watts, Deputy Director of Human Resources for DOC.   Watts was brought to DOC from the Department of Social and Health Services (DSHS) by Theresa Burkheimer, the DOC Chief Human Resources Officer, who knew Watts from that agency.  As a recruiter, Price is aware that a major flaw in hiring at the State of Washington is the notion of cronyism.   Employees are not hired on the basis of merit to perform the job but based on associations with persons already employed inside an agency.  This is a matter of public concern because it limits the ability to recruit the best applicants for the job, and well qualified applicants are ignored while friends and family are advanced.   This cronyism extends across Washington State agencies and is a serious problem in Washington State employment recruitment and retention including at DOC.

2.7     Plaintiff immediately noticed a change in attitude toward her from Watts. Watts engaged in various unlawful acts against Price including discrimination, retaliation, Family Medical Leave Act interference, denial of reasonable accommodation as more particularly described below.

2.8     Plaintiff has filed an initial Tort Claim with the State of Washington on or about May 14, 2025, an Amended Tort Claim on or about September 18, 2025, and a Second Amended Tort Claim on November 17, 2025.

2.9     Plaintiff filed an initial EEOC charge under claim number 832-2025-00279 and was issued a Notice of Right to Sue on or about September 18, 2025.

COMPLAINT -Page 3

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2.10    Following ongoing mistreatment of Price by Watts, Price brought forward her reasonable concerns that the disparate treatment she was experience was due to animosity from Watts because of Price's race.

2.11    For the purposes of Plaintiff's claims brought pursuant to 42 U.S.C. §1983, Plaintiff was wrongfully terminated on or about October 10, 2025.

2.12    Price was not provided any training for her job or specifications for performance expectations beyond basic outline of duties. There was no formal onboarding program provided to Price.

2.13    After Price complained about what she reasonably believed to be discriminatory actions, Watts took a number of adverse and retaliatory actions against Price. Such actions included, but are not limited to, extending Price's probationary period, creating documents and backdating them to justify adverse employment actions, deleting copies of exculpatory documents and documents showing the back dating of documents, improperly criticizing Price's work, interfering with Price's Family Medical Leave Act ("FMLA") leave, refusing to engage in the interactive process on Price's accommodation request, instructing others to inform Price she could not return to work following use of FMLA without a doctor's note stating she had no restrictions upon her ability to perform her job.

2.14    Henderson made false statements to the outside investigator looking into Price's conduct, including statements contradicting her prior communications with Price. Watts and Henderson manipulated personnel records, restricted Price's access to work, and supported adverse actions approved by Burkheimer. Price is informed that HR leadership communicated directly with the outside investigator and made statements indicating the investigation would be substantiated before it was completed.

COMPLAINT - Page 4

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2.15    An HR employee was instructed to download and store documents relating to Price—including copies of her protected filings and investigation materials—in a personal drive, and to access forensic materials relating to Price's computer. The employee was further told the file could be deleted from shared storage. These actions occurred after Commerce received notice of litigation.

2.16    Price shared her concerns of unlawful bias and retaliation with Corrina McElfish on or about February 13, 2024.

2.17    In February 2024, Price's trial service was extended. The HRMS entry documenting this extension was created by Watts on February 7, 2024, even though entering and modifying trial-service records was not within her assigned duties and was the responsibility of Price's supervisor or the HRMS Consultant. The timing followed Price's documented reports of Watts' conduct in late 2023 and occurred shortly after protected complaints made in early 2024.   Price reported these concerns to Marissa Vanhoozer who was the Chief Operating Officer and oversaw the Equity office of DOC; to Kyle Gitchel, Managing Director of Equity, and Jage Curl, the Equity Consultant.   Plaintiff was provided no relief apart from Ms. Vanhoozer indicating she would share Price's concerns with Burkheimer, even though Burkheimer was one of the parties engaging in the unlawful acts.

2.18    After Price continued reporting discrimination, retaliation, and misuse of authority, the trial-service extension was later altered or removed from subsequent versions of her personnel record. By 2025, the extension no longer appeared in Commerce's official HRMS file. Price alleges that the irregular handling of her trial-service documentation—including the entry by the wrong official, the timing, and its later removal—is consistent with a broader pattern of retaliation,

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1  discrimination, and disparate treatment, as well as efforts to suppress or undermine
2  her reporting of improper conduct.

3  2.19    On March 11, 2024, while performing her job duties, Price addressed an internal
4          client's concern that applicants might be using Artificial Intelligence ("AI") tools to
5          complete written interview assignments. Price advised that Commerce had no policy
6          prohibiting AI use and that disqualifying candidates on that basis would be
7          improper. She drafted a transparency statement informing applicants to write the
8          assignment in their own words and that the sample would be reviewed using an AI-
9          detection tool. After presenting this update to Watts and Henderson, Price was told
10         that using an AI-detection tool violated "policy," although no such policy existed.
11         On March 13, 2024, Watts drafted a written warning based on this alleged violation,
12         and Henderson delivered it with the suggestion that Price's trial service could be
13         ended. This threat—issued for conduct within her normal duties and following her
14         protected reports—reflected a continuing pattern of retaliation, discrimination, and
15         disparate treatment.

16 2.20    On April 10, 2025, Price participated as a witness in an investigation conducted
17         by third-party investigator Karen Sutherland involving HR leadership, including
18         Watts, Henderson, and Burkheimer. She provided testimony regarding
19         discrimination, retaliation, system alteration, loss of duties, and her trial-service
20         extension. Price is informed and believes that HR leadership obtained a full copy of
21         the investigation, including her statements. An HR manager informed Price that
22         Watts stated Watts intended to delete the investigation to prevent its disclosure.

23 2.21    Price continued to report concerns into January 2025, including notifying the
24         DOC agency Director, Joseph Nguyen of discriminatory and retaliatory conduct by

25

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1   Watts, Henderson, and Burkheimer.   She again reached out in August 2025, but Mr.
2   Nguyen did not respond, nor did Megan Matthews, the Director of Equity.

2.22    On May 13, 2025, Price raised additional concerns directly with Burkheimer
regarding retaliation, removal of duties, and loss of trust. That evening, Price filed
her initial State Tort Claim.Price learned that a senior Human Resources ("HR")
representative was having dinner with a candidate for a senior position and the
candidate's wife.   Price raised concerns regarding an ethics violation involving an
executive-level recruitment. CHRO Burkheimer directed that a peer-level employee
serve on the interview panel for a position that, once filled, would become that
employee's supervisor. Although acknowledging a conflict of interest and stating
she was recusing herself, Burkheimer told Price and Henderson that she still wanted
to "have a hand" in selecting the individual who would ultimately supervise her.
The panel member later informed Price that Burkheimer invited him to dinner,
where a candidate for the same position was also present. Price reported the incident
as an ethics concern to the Chief of Staff. Within about a week, Burkheimer
removed Price from the recruitment. Price alleges this removal was retaliatory,
followed her protected speech on a matter of public concern, and was intended to
limit her access to information about the misconduct she reported.

2.23    Price reported this as a potential conflict of interest because the recruitment was
underway.   Price reported that this was unethical.   Price was removed from the
recruitment both as a form of retaliation for reporting matters of public concern and
to limit her access to information regarding the recruitment. Price reported matters
of public concern regarding how the senior HR managers were conducting
operations and as a result, the DOC's ability to recruit and retain quality applicants
was adversely impacted.

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2.24    Price was notified on or about May 21, 2025, that she was "under investigation."

2.25    When interviewed she noted that Watts and two other managers had pushed through raises for themselves. Plaintiff was removed from work groups, excluded from routine communications, denied access to work resources, and subjected to standards and scrutiny not applied to similarly situated non-Black employees. These actions exacerbated the hostile work environment and were part of a continuing pattern of retaliation.

2.26    Plaintiff was again told she was under investigation for ethics violations, violating HR expectations, and breach of confidentiality, but Defendants refused to provide specific facts supporting the allegations. Her computer and phone were taken from her, and she was directed she could not speak with DOC employees.

2.27    As a result of Defendants' conduct, Plaintiff had a serious medical reaction and need both medication and time off from work. Her physician recommended a leave of absence from May 29, 2025, until August 2, 2029. Price went out on protected FMLA leave because of the serious impacts upon her health proximately caused by the mistreatment and retaliation of Defendants. On May 20, 2025, Price filed her initial Equal Employment Opportunity Commission ("EEOC") complaint. On May 21, 2025—one day later—Burkheimer placed Price "under investigation," confiscated her computer and phone, reassigned her, and directed her not to communicate with DOC employees.

2.28    When Price's physician cleared her to return to work on August 4, 2025, with recommended modifications, Commerce refused to permit her return unless she provided a certification with "no restrictions." Commerce refused to engage in the interactive process and directed an HR employee to access and display Price's

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

confidential medical documentation for Watts. These actions constituted FMLA interference, disability discrimination, and retaliation for protected leave.

2.29    On August 5, 2025, Defendants rejected Price's return to work and forced her back onto FMLA. She was told that no reasonable accommodations would be considered and she must return to work without any restrictions or accommodations. Defendants failed to engage in the interactive process. The Defendants never articulated any claim the requested accommodations would cause an undue hardship for the employer. Watts specifically directed that Price be blocked from returning from her FMLA leave.

2.30    In June 2025, Several meetings were held with Watts and other managers, Lindsey Henderson, and Theresa Burkheimer on how to fire Price. Price had consulted an attorney who lived next door to Theresa Burkheimer and the attorney reported to Ms. Burkheimer that he had been consulted by Price. Burkheimer told those in the meetings to fire Price, "Guess who called my neighbor. Price is going to sue us." Watts was deleting information from the system to cover up the adverse actions and misconduct. There had been no formal complaint against Price, and the investigation was initiated by Watts and Theresa Burkheimer.

2.31    During the summer of 2025, while Price was on protected FMLA leave, HR leadership—including Watts and Burkheimer—made internal statements joking about firing Price, referring to her as "the worst hire," and encouraging another HR manager to file an unfounded Paid Family Medical Leave Act fraud allegation against Price. These statements were made by decision-makers after they became aware of Price's protected complaints.

COMPLAINT · Page 9

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2.32    Price was informed by an HR manager that, during the period she was placed "under investigation," HR leadership—including Burkheimer and Watts—discussed the need to create the appearance that Watts was not involved in the investigation while continuing to influence decisions behind the scenes. Price alleges this manufactured appearance of non-involvement was intended to conceal their continued participation in actions taken after she reported discrimination, retaliation, and misuse of authority.

2.33    Price was further informed and believes, based on the same firsthand reports, that Henderson made additional statements implying that Price was not working and was "probably at home watching her four kids," and that Price supposedly believed she would "get a million dollars" from her tort claim and "blow it in Vegas." Price alleges that these remarks reflected racialized stereotypes, were made by individuals involved in the decision-making process, and further demonstrate discriminatory animus and retaliatory motive.

2.34    Theresa Burkheimer had taken similar adverse employment actions against prior persons who had opposed discriminatory actions or actions that were of public importance upon which employees exercised their right to speak as protected by the United States Constitution.

2.35    Price was placed into a clerical position at least three levels below her job class and was required to do filing and scanning despite her education and training as a recruiter.  Her access to data was restricted.

2.36    Henderson alleged that she had given Price a written reprimand for talking about Price's daughter's hobby making "cake pops" during work hours and alleged that she was not following Henderson directive on that issue.  Yet Henderson had never given such a directive and had back dated a document she created on May 1, 2025,

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

after Price had complained about discriminatory treatment to support Henderson's allegation of Price's alleged misconduct.

2.37   Plaintiff reported her concerns to Daniel Zavala, the Chief Operating Officer and requested oversight and reported the falsification of documents used to support adverse employment actions against Price.  When her concerns were apparently ignored, she elevated them to Joe Nguyen, the Director of the DOC.  There was no response to Price's concerns and requests for oversight.

2.38   Price reached out to the Office of the Attorney General for the State of Washington, Civil Rights Division for help.  Yet that agency did not respond in any fashion.

2.39   Price made complaints to the State Auditor's Office.  On August 19, 2025, The Office of the Washington State Auditor, Pat McCarthy declined to look into her concerns of improper influence in recruiting, improper pay raises and adverse employment actions following protected disclosures, citing "It appears there is already an active litigation for this matter."

2.40   Henderson reported several false statements about Price to the investigator looking into the allegations Henderson had advanced about Price or had encouraged others to advance.

2.41   Watts directed that Price be removed from an Equal Opportunity work group as a form of retaliation and stigmatization. Watts latter alleged the work group was only for managers.

2.42   Price was denied access to information during the "investigation" of her.   The basis of the alleged misconduct changed from what Price was interviewed regarding to what was acted upon.   Plaintiff was accused of improperly using Artificial

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

Intelligence ("AI") to do portions of her work, yet coworkers openly used ChatGPT, an AI program.

2.43   Plaintiff's tort claim and EEOC Inquiry were added to her personnel file and referenced in disciplinary actions against her.  Plaintiff was never informed that the allegations against her were expanded or provided an opportunity to address the expanded allegations.

2.44   Price is informed and believes that Defendants engaged in an escalating pattern of adverse employment actions throughout 2024 and 2025 for the purpose of building a false record against her and forcing her out of state service. These actions included threats to end her trial service, creation and backdating of documents, alteration of personnel records, unwarranted criticism, interference with her protected leave, restricting her return-to-work, and initiating an investigation one day after she filed her EEOC charge.

2.45   Lindsey Henderson sabotaged Price's recruitment chances for a job where Price was reportedly the top candidate.  It is believed that this action was taken in retaliation for Plaintiff opposing discriminatory conduct.

2.46   Defendants engaged in an escalating pattern of adverse employment actions against Plaintiff to build a record against her and force her out of the DOC.

2.47   Defendants created and tolerated a hostile work environment for Plaintiff because of her race that interfered with her employment and caused her significant damages.

2.48   As a result of Defendants' actions, Plaintiff suffered significant economic and noneconomic damages.  Such damages include but are not limited to lost wages, damage to professional reputation, limited professional advancement, interference with prospective employment opportunities, severe emotional distress, medical

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

expenses, loss of enjoyment of life, lost benefits and other damages to be proven at the time of trial.

### III.    CAUSES OF ACTION AND PRAYER FOR RELIEF.

3.1    Plaintiff is entitled to payment from and judgment against Defendant pursuant violation of her rights under Title VII of the Civil Rights Act, as amended 42 U.S.C. §2000e for discriminatory and retaliatory actions because of Price's race and protected conduct. Such conduct also violates the Washington Law Against Discrimination, RCW 49.60 et. seq. (WLAD). Plaintiff is entitled to damages proximately caused by such actions.

3.2    Plaintiff was denied reasonable accommodation, the employer refused to engage in the interactive process and discriminated and retaliated against Plaintiff for seeking accommodation for her disability in violation of the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.* (ADA). Such conduct also violates the Washington Law Against Discrimination, RCW 49.60 et. seq. (WLAD). Plaintiff is entitled to damages proximately caused by such actions.

3.3    Defendant interfered with Plaintiff's use of the leave allowed pursuant to the Family Medical Leave Act by blocking her return from such leave, not putting her into her prior or equivalent position upon her return and using the request as a negative factor in employment decisions. This violated 29 U.S.C. § 2601*et seq.* Plaintiff is entitled to damages proximately caused by such actions.

3.4    Defendants subjected to Plaintiff to unequal terms of employment in violation of 42 U.S.C. §1981. Plaintiff is entitled to damages proximately caused by such actions.

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

3.5    Defendant Watts unlawfully retaliated against Plaintiff for raising matters of important public concern and took adverse employment actions, including wrongful termination in violation of Plaintiff's clearly established constitutional rights in violation of 42 U.S.C. § 1983. Plaintiff is entitled to damages proximately caused by such actions.

3.6    Defendants unlawfully retaliated against Plaintiff for presenting information to the DOC Agency Director and the Office of the State Auditor in violation of RCW 42.40, et seq and engaged in actions identified in RCW 42.40.050 as retaliatory, and caused Plaintiff damages. Plaintiff is entitled to damages proximately caused by such actions.

3.7    Plaintiff further asserts that the case of *Raines v. Washington,* 100 Wn.2d 660, 674 P.2d 165 (1983) was wrongly decided and the State of Washington gave up sovereign immunity under 42 U.S.C. §1983 when it adopted RCW 4.92.090 when the legislature unequivocally stated that: "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

WHEREFORE, Plaintiff prays for judgment as follows:

1.    General and Special Damages in an amount to be proven at the time of trial.

2.    Punitive damages as permitted by law.

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

3.      For equitable relief as appropriate including reinstatement, purging information from Plaintiff's personnel file, training for Defendants, tax relief, or such actions as the Court may deem appropriate.

4.      Costs and attorneys' fees as may be allowed by statute or the common law, including 29, U.S.C. § 2617,  42 U.S.C. § 1988, 42 U.S.C. § 12205, and RCW 49.60. et. seq., including expert witness fees.

5.      That these pleadings be deemed to conform to the proof presented at trial.

6.      For leave to freely amend these pleadings as justice may allow.

7.      For such other and further relief in favor of the Plaintiff as the Court deems just and proper or equitable.

DATED this _____ day of December 2025.

KRAM & WOOSTER, P.S.


Richard H. Wooster WSBA #13752
Attorneys for Plaintiff


**JURY DEMAND**

COMES NOW the Plaintiff, and pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby requests a six person jury in the above referenced matter.

Dated this _____ day of December 2025.

KRAM & WOOSTER, P.S.


Richard H. Wooster WSBA #13752
Attorneys for Plaintiff

COMPLAINT -Page 15

Law Offices of
**Kram & Wooster, P.S.**
1901 SOUTH "I" STREET
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile